# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

JIMMY LEE LETTERMAN, *et al.*,    )
           )
        Plaintiffs,    )
           )   Case No. 5:12-cv-6136-NKL
           )
v.           )
           )
STEVEN LAMMERS, *et al.*,    )
           )
        Defendants.    )

## DEFENDANTS' SUGGESTIONS IN OPPOSITION
## TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES .......................................................................iii

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................... 3

    I.    The hourly rates claimed by Plaintiffs are excessive ................................. 4

    II.    Unsuccessful claims................................................................................ 7

        A.  Claims against the extraction team ........................................................ 7

        B.  Claims against Defendant Hammer..................................................... 11

        C.  Claims against Defendant Jennings .................................................... 12

        D.  Claims against Defendant Cluck ......................................................... 15

        E.  Fees and expenses related to Plaintiffs' motion

           for spoliation sanctions ..................................................................... 16

        F.  Plaintiffs' opposition to Defendants' motion for

           summary judgment ............................................................................. 16

        G.  Plaintiffs' opposition to Defendants' motion to stay ............................ 17

        H.  Research regarding potential claims against medical staff ................. 17

    III.    Fees and costs not reasonably expended .................................................... 18

        A.  Trial prep .......................................................................................... 18

        B.  Irrelevant depositions of non-parties ................................................. 19

        C.  Video depositions............................................................................... 23

        D.  Costs associated with Dr. Mary Case .................................................. 24

IV.    Claimed fees and costs are excessive in light of the verdict ...................... 24

CONCLUSION........................................................................................................ 25

Case 5:12-cv-06136-NKL   Document 395   Filed 10/30/15   Page 3 of 31

# TABLE OF AUTHORITIES

**CASES**

*Al-Birekdar v. Chrysler Group, LLC,*
    499 Fed. Appx. 641 (8th Cir. 2013) ................................................................ 25

*Am. Guarantee & Liability Ins. Co. v. U.S. Fidelity & Guaranty Co.,*
    No. 4:06-cv-655-RWS, 2010 WL 1935998 (E.D. Mo. May 10, 2010) ............... 24

*Ancona v. Templeton,*
    No. 4:10-cv-626-RWS, 2012 WL 4324916 (E.D. Mo. Sept. 20, 2012) ....... 5, 6, 7

*Barrett v. Claycomb,*
    No. 2:11-cv-4242-NKL, 2013 WL 6920860 (W.D. Mo. Dec. 9, 2013) ................ 6

*Greater St. Louis Const. Laborers Welfare Fund v. KSG Enterprises, LLC,*
    No. 4:14-cv-873-CEJ, 2015 WL 631999 (E.D. Mo. Feb. 13, 2015) .................... 7

*Greater St. Louis Const. Laborers Welfare Fund v. Innovative Concrete, LLC,*
    No. 4:14-cv-1354-CEJ, 2015 WL 3891244 (E.D. Mo. June 24, 2015) ............... 7

*Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC,*
    No. 08-0840-CV-W-ODS, 2013 WL 1155245 (W.D. Mo. Mar. 20, 2013) ......... 24

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ................................................................................... 3, 25

*H.J. Inc. v. Flygt Corp.,*
    925 F.2d 257 (8th Cir. 1991) ...................................................... 7, 10, 12, 14, 16

*Jenkins by Jenkins v. Missouri,*
    127 F.3d 709 (8th Cir. 1997) ......................................................................... 4, 7

*Kennard v. Kleindienst,*
    No. 2:14-cv-4017-BCW, 2015 WL 4076473 (E.D. Mo. June 5, 2015) ............ 5, 6

*Letterman v. Does,*
    789 F.3d 856 (8th Cir. 2015) ............................................................................. 2

*Moore v. City of Des Moines, Iowa,*
    766 F.2d 343 (8th Cir. 1985) ............................................................................. 5

Case 5:12-cv-06136-NKL   Document 395   Filed 10/30/15   Page 4 of 31

*Phelps-Roper v. Koster*,
No. 06-4156-CV-C-FJG, 2014 WL 4312899 (W.D. Mo. Sept. 2, 2014) .............. 6

*Phillips v. Missouri*,
No. 97-0748-CV-W-5, 2000 WL 33910092 (W.D. Mo. Mar. 29, 2000) ............ 25

*Survivors Network of Those Abused by Priests, Inc. v. Joyce*,
No. 4:12-cv-1501-ERW, 2015 WL 4042143 (E.D. Mo. Jul. 1, 2015) ................. 6

*Traditionalist Am. Knights of Ku Klux Klan v. City of Desloge, Mo.*,
No. 4:12-cv-2085-AGF, 2013 WL 6068895 (E.D. Mo. Nov. 18, 2013)............... 6

*Wal-Mart Stores, Inc. v. Barton*,
223 F.3d 770 (8th Cir. 2000) .............................................................................. 4

*Will v. Michigan*,
491 U.S. 58, 71 (1989) ..................................................................................... 17

## STATUTES

28 U.S.C. § 1988..................................................................................................... 3

Case 5:12-cv-06136-NKL   Document 395   Filed 10/30/15   Page 5 of 31

Defendants Bryan Earls, Jerry Farnsworth, Steven Lammers, and Noreen Gastineau ("Defendants"), by and through their undersigned counsel, hereby submit their Suggestions in Opposition to Plaintiff's Motion for Attorney's Fees, Costs, and Expenses (Doc. 388). In support of their suggestions, Defendants state a follows:

## INTRODUCTION

Plaintiffs are the parents of Danial Letterman, who died on November 21, 2011, from injuries he suffered just before midnight on November 17, 2011, when he accidentally fell inside his padded cell at WRDCC in St. Joseph, Missouri. Plaintiffs filed their initial complaint in this case on November 21, 2012 alleging federal claims for medical indifference and excessive force, and state law claims for wrongful death against William D. Burgess III, George Lombardi, and ten unnamed "Jon Does." Doc. 1.

On June 12, 2013, Plaintiffs amended their complaint to add claims against thirteen new defendants. In addition to Defendants Earls, Farnsworth, Lammers, and Gastineau, Plaintiffs also named Jean Finney, Michael Sipes, Michael Eivins, John Mowry, James Neumann, and Gabrel Wagers, Judy Cluck, James Hammer, and Marcia Jennings. Doc. 37.

Defendants Finney, Sipes, Eivins, Mowry, Neumann, and Wagers were members of an extraction team that moved Letterman to the padded cell on November 17, 2011; Defendant Cluck was an officer who was present in the TCU when Letterman was brought to the padded cell by the extraction team; Defendant Hammer was the officer who opened the door to Letterman's cell on November 18,

2011; and Defendant Jennings was caseworker who briefly came in contact with Letterman in the afternoon of November 18, 2011, before his door was opened.

After the close of discovery, on November 27, 2013, Plaintiffs agreed to dismiss Defendant Hammer. Doc. 165. Thereafter, on December 4, 2013, the undersigned counsel moved for summary judgment on behalf of all of the remaining defendants. *See* Doc. 166; Doc. 167; Doc. 168; Doc. 169. On January 15, 2014, Plaintiffs agreed to dismiss Defendants Burgess, Lombardi, Cluck, Eivins, Finney, Mowry, Neumann, Sipes, and Wagers. Doc. 195.

Plaintiffs opposed the motions for summary judgment filed by Defendants Earls, Farnsworth, Lammers, Gastineau, and Jennings. On February 24, 2014, the Court granted and denied in part the motions filed by Defendants. Specifically, the Court granted the motions for partial summary judgment filed by Defendants Lammers and Gastineau, and granted summary judgment on the official capacity and excessive force claims asserted against Defendants Earls, Farnsworth, and Jennings. The Court denied summary judgment as to Plaintiffs' remaining claims against Defendants Earls, Farnsworth, and Jennings. *Id.*

Defendants Earls, Farnsworth, and Jennings appealed the Court's denial of their motions for summary judgment on qualified immunity grounds to the Eighth Circuit, and on June 16, 2015, the Eighth Circuit affirmed the Court's ruling as to Defendants Earls and Farnsworth, but reversed as to Defendant Jennings. *Letterman v. Does*, 789 F.3d 856 (8th Cir. 2015).

This matter was tried before a jury in Kansas City beginning on September

2

28, 2015, on Plaintiffs' state law wrongful death claims against Defendants Earls, Farnsworth, Lammers, Gastineau, and Jennings, and on Plaintiffs' medical indifference claims against Defendants Earls, Farnsworth, Lammers, and Gastineau. On October 2, 2015, the jury returned a verdict in favor of Defendant Jennings, but found in Plaintiffs' favor on all other claims against Defendants Earls, Farnsworth, Lammers, and Gastineau. Doc. 381

The jury awarded $1,000,000.00 on Plaintiffs' state law wrongful death claims against Defendants, and awarded a total of $311,793.29 on Plaintiffs' medical indifference claims. Doc. 381.

On October 13, 2015, Plaintiffs filed a motion requesting reimbursement for $376,713.73 in attorney's fees, costs, and expenses. Doc. 388. For the following reasons, Defendants partially oppose Plaintiffs' request.

## ARGUMENT

42 U.S.C. § 1988 authorizes district courts to award a reasonable attorneys' fee to prevailing parties in civil rights litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate. *Id.* at 433. Thus, this Court must undertake a two-part inquiry to determine whether the fees requested by Plaintiffs are reasonable: (1) whether the number of hours Plaintiffs' attorneys expended is reasonable; and (2) whether the rates charged by Plaintiffs' attorneys are reasonable. *Id.*

3

In addition, when a plaintiff has prevailed on some, but not all, of her claims, the Court should consider the potential impact of partial success on the fee award. Accordingly, if any issues on which the plaintiff lost are unrelated to those on which she won, the unrelated issues must be treated as if they were separate cases and no fees can be awarded. *Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000) (citing *Jenkins by Jenkins v. Missouri*, 127 F.3d 709, 716 (8th Cir. 1997)).

In this case, the Court should reduce the amounts requested by Plaintiffs because Plaintiffs are claiming fees for all the work that was done on this case, whether it related to successful claims or not. The Court should also reduce the fees and costs requested by Plaintiffs to the extent said fees and costs are unreasonable, cumulative, or duplicative. Further, the Court should reduce the amount requested by Plaintiffs because the hourly rates charged by Plaintiffs are unreasonable under the circumstances. Finally, the Court should reduce the fees and costs requested by Plaintiff because they exceed the total amount awarded by the jury on Plaintiffs' constitutional claims.

## I.     The hourly rates claimed by Plaintiffs are excessive.

In support of their motion for fees, Plaintiffs submitted time records from three attorneys and one paralegal who worked on this case. Plaintiffs propose to charge $350.00/hour for the time expended by Attorney Ari Rodopoulos, $375.00/hour for the time expended by Attorney Noah Wood, $275.00/hour for the time expended by Attorney Mike Miller, and $125.00/hour for the time expended by Tammy Reed, a paralegal assigned to the case. However, the Court should reduce

the rates claimed by Plaintiffs' attorneys.

"The rate of attorney's fees is reasonable if it is 'within the general rates charged for a particular service in the relevant [legal] community.'" *Ancona v. Templeton*, No. 4:10-cv-626-RWS, 2012 WL 4324916, *2 (E.D. Mo. Sept. 20, 2012) (quoting *Moore v. City of Des Moines, Iowa*, 766 F.2d 343, 346 (8th Cir. 1985)). In support of the rates claimed by their attorneys, Plaintiffs point to a recent edition of *Missouri Lawyers Weekly* that showed that partners in the Kansas City area generally earn $400.00/hour and associates earn $228.00/hour. A copy of the relevant page from *Missouri Lawyers Weekly* is attached hereto as Exhibit A. Plaintiffs also argue that the rates requested by Plaintiffs are "in line" with the rates approved in *Kennard v. Kleindienst*, No. 2:14-cv-4017-BCW, 2015 WL 4076473 (E.D. Mo. June 5, 2015).

The *Kennard* case does not support the rates claimed by Plaintiffs. In *Kennard*, the court approved hourly rates of $365.00 and $275.00 for Attorneys Anthony Rothert and Grant Doty from the ACLU. *Id.* at *3. However, in *Kennard* Attorneys Rothert and Doty submitted affidavits, copies of which are attached hereto as Exhibits B and C respectively, showing they had extensive experience in civil rights cases. In contrast to the affidavits submitted by Attorneys Rothert and Doty in *Kennard*, the declaration submitted by Attorney Rodopoulos states that the Wood Law Firm focuses almost exclusively on consumer class actions. Doc. 389 ¶ 6. Further, although Attorney Rodopoulos states he has worked on civil rights cases nearly every year or so since 2006, he states that his practice, like the Wood Law

Case 5:12-cv-06136-NKL   Document 395   Filed 10/30/15   Page 10 of 31

Firm generally, "has focused on consumer protection and consumer class actions." Doc. 389 ¶ 15. Given that Attorneys Rothert and Doty had extensive civil rights experience and were awarded only $365.00 and $275.00 respectively in *Kennard*, the rates claimed by Plaintiffs' attorneys are excessive. Attorneys Rothert and Doty built a record of success in numerous civil rights cases before they graduated to the rates awarded by the court in *Kennard*.

Indeed, despite years of experience and an exclusive focus on civil rights law, Attorneys Rothert and Doty were awarded only $225.00/hour and $200.00/hour as recently as September 20, 2012, in the *Ancona* case. *See Ancona*, 2012 WL 4324916, at *2 (approving $225.00/hour for Mr. Rothert and $200.00/hour for Mr. Doty); *see also Barrett v. Claycomb*, No. 2:11-cv-4242-NKL, 2013 WL 6920860, *1 (W.D. Mo. Dec. 9, 2013) (approving $325.00/hour for Mr. Rothert and $250.00/hour for Mr. Doty); *Traditionalist Am. Knights of Ku Klux Klan v. City of Desloge, Mo.*, No. 4:12-cv-2085-AGF, 2013 WL 6068895, at *2 (E.D. Mo. Nov. 18, 2013) (approving $225.00/hour for Mr. Rothert and $200.00/hour for Mr. Doty); *Phelps-Roper v. Koster*, No. 06-4156-CV-C-FJG, 2014 WL 4312899, at *5 (W.D. Mo. Sept. 2, 2014) (approving $250.00/hour for Mr. Rothert and $325.00/hour for Mr. Doty); *Survivors Network of Those Abused by Priests, Inc. v. Joyce*, No. 4:12-cv-1501-ERW, 2015 WL 4042143, at *1 (E.D. Mo. Jul. 1, 2015) (approving $275.00/hour for Mr. Rothert and $365.00/hour for Mr. Doty).

Given that Plaintiffs' attorneys have not shown they have anywhere near the relevant experience of Attorneys Rothert and Doty, the Court should reduce the

rates claimed by Plaintiffs' attorneys. Specifically, Defendants suggest the rate charged by Attorney Rodopoulos be reduced to $225.00/hour, the rate charged by Attorney Wood be reduced to $200.00/hour, and the rate charged by Attorney Miller be reduced to $175.00/hour. Defendants further suggest the rate for Ms. Reed, Plaintiffs' paralegal, be reduced to $100.00. *Cf. Greater St. Louis Const. Laborers Welfare Fund v. Innovative Concrete, LLC*, No. 4:14-cv-1354-CEJ, 2015 WL 3891244, at *3 (E.D. Mo. June 24, 2015) ($90.00 for paralegal services was reasonable); *Greater St. Louis Const. Laborers Welfare Fund v. KSG Enterprises, LLC*, No. 4:14-cv-873-CEJ, 2015 WL 631999, at *2 (E.D. Mo. Feb. 13, 2015) (same). The rates proposed by Defendants are similar to the rates approved for experienced civil rights attorneys in the *Ancona* case, and thus, are reasonable and well in line with the rates previously approved in similar cases in Missouri.

## II. Unsuccessful claims.

The Court should reduce Plaintiffs' fee request because Plaintiffs are seeking compensation for work that was done on numerous unsuccessful claims. *See, e.g.*, *Jenkins by Jenkins*, 127 F.3d at 716. Additionally, to the extent it is impossible to tell based on the bills submitted by Plaintiffs which fees, costs, or expenses are associated with which claims, the Court should exercise its discretion and reduce the bills accordingly. *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (vague bills may warrant reduction by court).

### A. Claims against the extraction team.

Plaintiffs are claiming compensation for time and expenses related to their

claims against Defendants Finney, Sipes, Eivins, Mowry, Neumann, and Wagers, who were members of the extraction team that moved Letterman to the padded cell on November 17, 2011. However, all of Plaintiffs claims against the extraction team were dismissed voluntarily on January 15, 2014, and the parties agreed they should each be responsible for their own costs and fees. Doc. 195. Although Defendants anticipate that Plaintiffs may argue that the fees and costs expended in deposing the members of the extraction team were necessary to prosecute their claims against the Defendants against whom Plaintiffs were successful, such an argument is not credible.

Plaintiffs did not amend their complaint to add claims against the extraction team until June 12, 2013. Doc. 37. At that time, Plaintiffs already had all of the video from inside and outside of Letterman's padded cell, the investigative reports completed by the Office of the Inspector General and the Missouri State Highway Patrol, a handheld video taken by the extraction team, and an autopsy report from Dr. Erik Mitchell stating that Letterman's injuries were consistent with an accidental fall. *See, e.g.*, Doc. Nos. 199-20 & 210-3 (report by Inspector Don Davison). Moreover, Plaintiffs did not depose any of the extraction team members until November 11, 2013, by which time Plaintiffs' own expert, Dr. Mary Case, had produced a report opining that Letterman had died from injuries suffered in an accidental fall inside his padded cell. Doc. Nos. 148, 149, 151, 152, 153, and 155; *see also* Doc. Nos. 110 and 170-3 (expert report of Dr. Mary Case).

Although Plaintiffs called Jean Finney, the leader of the extraction team, at

8

trial in this case, Ms. Finney provided no relevant testimony, and her participation at trial was not necessary to Plaintiffs' ultimate success on the merits. Indeed, if anything, Ms. Finney's testimony likely confused the jury as to the issues in this case, and was cut short after the Court sustained relevance objections to the exhibits offered by Plaintiffs during Ms. Finney's testimony.

Given that Plaintiffs had no valid basis to assert claims against the extraction team members in the first instance, and that such claims were ultimately unsuccessful, the Court should reduce Plaintiffs' fees and costs as follows:

**Time expended by Attorney Rodopoulos:**

    a. 6/4/13: The time spent drafting the amended complaint should be reduced by **3.4 hours**, or 40%, because member of the extraction team comprised 6 of the 15 persons named (*i.e.*, 40%) as defendants in the amended complaint;

    b. 11/11/13: The time spent preparing for and attending the depositions of the extraction team defendants (**12.2 hours**) should be disallowed entirely (although this time entry also includes time spent preparing for and attending the depositions of Defendants Jennings and Hammer, such claims should also be disallowed because Plaintiffs were unsuccessful on their claims against Jennings and Hammer);

    c. 2/14/14 to 2/19/14: The total time spent preparing witness outlines and deposition designations should be reduced from 44.9 hours by

9

19%, or by **8.5 hours**, to reflect the fact that the extraction team

defendants accounted for 6 of the 32 witnesses (*i.e.*, 19%) whose

outlines and designations were prepared;

**Time spent by Tammy Reed, paralegal:**

    a.  Ms. Reed spent time preparing notices, reviewing, storing, editing,

and processing depositions for the extraction team Defendants.

However, the time spent by Ms. Reed on such activities is not easily

identifiable or severable from the time she spent on other activities

and on other depositions. *See, e.g.*, Ms. Reed's time entries on

11/6/13, 11/14/13, 11/22/13, 12/4/13, 12/18/14, and 2/19/14.

Accordingly, the Court reduce the total time spent by Ms. Reed by

an amount to fairly approximate the time she spent working on

Plaintiffs' claims against the extraction team defendants. *H.J. Inc.*,

925 F.2d at 260 (8th Cir. 1991).

**Costs associated with the extraction team Defendants:**

    a.  9/14/15: costs relating to Defendant Sipes ($30.00) should be

disallowed;

    b.  9/3/15: costs relating to Defendant Finney should be disallowed

($101.15)

    c.  11/26/13: costs relating to Defendant Eivins (approx. $255.67)

should be disallowed;

    d.  11/25/13: costs relating to Defendants Mowry, Neumann, Sipes,

10

Wagers, Finney, and Eivins (approx. $1,369.70) should be disallowed;

e. 11/21/13: costs relating to Defendants Wagers, Finney, Mowry, Neumann, and Sipes (approx. $1468.56) should be disallowed.

**B. Claims against Defendant Hammer.**

Plaintiffs voluntarily dismissed Defendant Hammer on November 27, 2013, and agreed to bear their own costs and fees associated with their claims against him. Doc. 165. Accordingly, the Court should disallow the following fees and expenses relating to Defendant Hammer:

**Time expended by Attorney Rodopoulos:**

a. 6/4/13: The time spent drafting the amended complaint should be reduced by **0.60 hours**, or 7%, because Defendant Hammer was 1 of 15 persons named (i.e., 7%) as defendants in the amended complaint;

b. 11/27/13: The time spent reviewing the stipulation to dismiss Defendant Hammer and corresponding with defense counsel should be disallowed (**0.60 hours**);

c. 2/14/14 to 2/19/14: The total time spent preparing witness outlines and deposition designations should be reduced from 44.9 hours by 3%, or by **1.3 hours**, to reflect the fact that the Defendant Hammer was 1 of the 32 witnesses (*i.e.*, 3%) whose outlines and designations were prepared.

11

**Time spent by Tammy Reed, paralegal:**

    a. Ms. Reed spent time preparing notices, reviewing, storing, editing, and processing the deposition of Defendant Hammer. However, the time spent by Ms. Reed on Defendant Hammer's deposition is not easily identifiable or severable from the time she spent on other activities and on other depositions. *See, e.g.*, Ms. Reed's time entries on 11/6/13, 11/21/13, 11/22/13, 11/26/13, and 2/18/14. Accordingly, the Court should reduce the total time spent by Ms. Reed by an amount to fairly approximate the time she spent working on Plaintiffs' claims against Defendant Hammer. *H.J. Inc.*, 925 F.2d at 260.

**Costs associated with Defendant Hammer:**

    a. 11/26/13: costs relating to Defendant Hammer (approx. $255.67) should be disallowed;

    b. 11/25/13: costs relating to Defendant Hammer (approx. $214.02) should be disallowed.

**C. Claims against Defendant Jennings.**

Plaintiffs were unsuccessful on their claims against Defendant Jennings. Accordingly, the Court should disallow the following fees and expenses relating to Defendant Jennings:

**Time expended by Attorney Rodopoulos:**

    a. 6/4/13: The time spent drafting the amended complaint should be

12

reduced by **0.60 hours**, or 7%, because Defendant Jennings was 1 of 15 persons named (i.e., 7%) as defendants in the amended complaint;

b. 1/7/14: The time spent researching Plaintiffs' opposition to Jennings's motion for summary judgment (**approx. 1.2 hours**) should be disallowed;

c. 1/15/14: The time spent drafting Plaintiffs' suggestions in opposition to Jennings's summary judgment (**10.8 hours**) should be disallowed;

d. 2/5/14: The time spent reviewing Jennings's reply in support of summary judgment (**approx. 1.4 hours**) should be disallowed;

e. 2/14/14 to 2/19/14: The total time spent preparing witness outlines and deposition designations should be reduced from 44.9 hours by 3%, or by **1.3 hours**, to reflect the fact that the Defendant Jennings was 1 of the 32 witnesses (*i.e.*, 3%) whose outlines and designations were prepared;

f. 9/28/15: The time spent revising Jennings's trial outline (**approx. 0.70 hours**) should be disallowed; and

g. 6/2/14 to 6/17/15: Of the total hours (approx. 88.3 hours) spent opposing Defendants' interlocutory appeal to the Eighth Circuit, the Court should disallow one third of the total, or **29.4 hours**, to account for the fact that the Eighth Circuit reversed the denial of

summary judgment as to Plaintiffs' claims against Defendant Jennings.

**Time spent by Tammy Reed, paralegal:**

a. Ms. Reed spent time preparing notices, reviewing, storing, editing, and processing the deposition of Defendant Jennings. However, the time spent by Ms. Reed on Defendant Jennings's deposition is not easily identifiable or severable from the time she spent on other activities and on other depositions. *See, e.g.*, Ms. Reed's time entries on 11/6/13, 11/21/13, 11/22/13, 11/26/13, and 12/4/13. Accordingly, the Court should reduce the total time spent by Ms. Reed by an amount to fairly approximate the time she spent working on Plaintiffs' claims against Defendant Jennings. *H.J. Inc.*, 925 F.2d at 260.

b. 1/15/14: The time spent preparing Plaintiffs' suggestions in opposition to Defendant Jennings's motion for summary judgment (**1.7 hours**) should be disallowed.

**Costs associated with Defendant Jennings:**

a. 11/26/13: costs relating to Defendant Jennings (approx. $255.67) should be disallowed;

b. 11/25/13: costs relating to Defendant Jennings (approx. $214.02) should be disallowed.

### D. Claims against Defendant Cluck.

Plaintiffs voluntarily dismissed Defendant Cluck on January 15, 2014, and agreed to bear their own costs and fees associated with their claims against her. Doc. 195. Accordingly, the Court should disallow the following fees and expenses relating to Defendant Cluck:

### Time expended by Attorney Rodopoulos:

a. 6/4/13: The time spent drafting the amended complaint should be reduced by **0.60 hours**, or 7%, because Defendant Cluck was 1 of 15 persons named (i.e., 7%) as defendants in the amended complaint;

b. 7/31/13: The time spent preparing for Defendant Cluck's deposition (**0.65 hours**) should be disallowed;

c. 8/5/13: The time spent attending the deposition of Defendant Cluck (**approx. 3.0 hours**) should be disallowed;

d. 2/14/14 to 2/19/14: The total time spent preparing witness outlines and deposition designations should be reduced from 44.9 hours by 3%, or by **1.3 hours**, to reflect the fact that the Defendant Cluck was 1 of the 32 witnesses (*i.e.*, 3%) whose outlines and designations were prepared.

### Time spent by Tammy Reed, paralegal:

a. The time spent by Ms. Reed on Plaintiffs' claims against Defendant Cluck appears to have been *de minimus* and not easily identifiable or severable from the time she spent on other activities. *See,*

15

*e.g.*, Ms. Reed's time entries on 12/3/13, 2/18/14, and 8/21/15. The Court should reduce the total time spent by Ms. Reed by an amount to fairly approximate the time she spent working on Plaintiffs' claims against Defendant Cluck. *H.J. Inc.*, 925 F.2d at 260.

**Costs associated with Defendant Cluck:**

a. 8/21/13: costs relating to Defendant Cluck (approx. $488.86) should be disallowed;

b. 8/19/13: costs relating to Defendant Cluck (approx. $494.06) should be disallowed.

### E. Fees and expenses related to Plaintiffs' motion for spoliation sanctions.

Plaintiffs spent a total of **31.0 hours** preparing a motion for spoliation sanctions against Defendants (Doc. 161). *See* Attorney Rodopoulos's time entries from 11/7/13, 11/25/13, 12/18/13, and 12/19/13. Although the Court ultimately granted Plaintiffs partial relief on a second motion alleging discovery abuses by Defendants (Doc. 163), the Court denied Plaintiffs' motion for spoliation sanctions. (Doc. 250). Accordingly, the time and expenses associated with Plaintiffs' motion for spoliation sanctions should be disallowed in their entirety.

### F. Plaintiffs' opposition to Defendants' motions for summary judgment.

Plaintiffs unsuccessfully opposed the motion for partial summary judgment filed on behalf of Defendants Lammers and Gastineau. Doc. 252. Plaintiffs spent

16

14.6 hours drafting suggestions in opposition to said motions. *See* Attorney Rodopolous's time entries from 1/8/14 and 1/9/14. Among other things, Plaintiffs argued in their opposition to summary judgment that this Court should overturn the Supreme Court's decision in *Will v. Michigan*, 491 U.S. 58, 71 (1989). *See* Doc. 196 at 8 ("Although *Will* supports Defendants' position, *Will* was incorrectly decided as explained by the dissenting justices and should not be followed."). All of the attorney time sent opposing the motions for partial summary judgment filed by Lammers and Gastineau, including a portion of the hours spent on 1/6/14 (approx. 3.1 hours), 1/7/14 (approx. 2.5 hours), and 2/5/14 (approx. 2.9 hours), should be disallowed. The approximate total amount of attorney hours spent opposing the motions for Lammers and Gastineau is **23.1 hours**.

The Court should also disallow the **1.1 hours** of paralegal time spent opposing the motion for partial summary judgment filed by Defendants Lammers and Gastineau. *See* T. Reed time entries on 1/8/14 (0.9 hours) and 1/9/14 (0.2 hours).

### G. Plaintiffs' opposition to Defendants' motion to stay.

Plaintiffs spent a total of **17.7 hours** opposing Defendants' motion to stay proceedings pending an interlocutory appeal. Doc. 297. *See* Attorney Rodopoulos's time entries from 2/28/14 (4.2 hours), 3/1/14 (6.4 hours), and 3/2/14 (7.1 hours). The Court should disallow all such time expended.

### H. Research regarding potential claims against medical staff.

Plaintiffs spent a total of **1.4 hours** research potential claims against Corizon, the medical provider that subcontracts with the Missouri Department of

Corrections. *See* Attorney Rodopoulos's time entries from 5/3/13. The Court should disallow such fees.

## III. Fees and costs not reasonably expended.

In addition to the above-referenced fees and costs that should be disallowed because they pertain to claims upon which Plaintiffs were unsuccessful, the following fees and costs should be disallowed because they were not reasonably expended:

### A. Trial prep.

Plaintiffs spent an unreasonable number of hours preparing motions in limine and jury instructions for trial in this case. Indeed, although motions in limine were fully briefed before Defendants filed an interlocutory appeal, Plaintiffs spent an additional 15.3 hours re-filing motions *in limine* and responding to Defendants' motions *in limine* when the case was re-set for trial on September 28, 2015. *See* Attorney Rodopoulos's time entries for 9/4/15 (6.1 hours) and 9/9/15 (9.2 hours). Given that the motions *in limine* filed by all of the parties in September 2015 were nearly identical to the motions filed in February 2014, the time spent by Plaintiffs drafting and responding to motions *in limine* was excessive. Accordingly, the Court should reduce the hours claimed by Plaintiffs for drafting motions in limine by an amount determined by the Court to be fair and reasonable.

Likewise, Plaintiffs spent an unreasonable amount of time drafting jury instructions. Plaintiffs spent 5.75 hours drafting jury instructions on 2/12/14 and 2/13/14. *See* Attorney Rodopolous's time entries. However, when the case was re-set

18

for trial in September 2015, Plaintiffs spent an additional 8.20 hours on 9/15/15 drafting amended jury instructions. *See id.* Although this case did present some novel legal issues, such issues did not reasonably require as much time as Plaintiffs spent drafting jury instructions. Accordingly, the Court should reduce the amounts claimed by Plaintiffs to an amount that is fair and reasonable.

**B. Irrelevant depositions of non-parties.**

The parties in this case took a total of 37 depositions, but many of the depositions taken of non-parties by Plaintiffs were irrelevant, and need not have been taken. Specifically, the Court should disallow the following fees and expenses on the grounds such fees and expenses were not reasonably incurred:

**a. Deposition of Heidi Harvey**

Heidi Harvey had no personal knowledge of any facts in this case, and on information and belief, Plaintiffs took her deposition merely because she had suggested in an interview with Inspector Davison that she had heard rumors about what happened to Letterman. Ms. Harvey's deposition was not used during trial, and she was not called as a witness. It should have been apparent from the Davison report, Doc. 210-3, that Ms. Harvey had nothing of value to add to Plaintiffs' case. Accordingly, the Court should disallow a total of **4.0 hours**. This reflects the time spent taking, attending, and preparing for Ms. Harvey's deposition. *See* Attorney Rodopoulos's time entries for 9/27/13 (approx. 2.7 hours), 2/16/14 (approx. 1.3 hours, which represents 3% of

19

the total time preparing witness outlines and designations between 2/14/14 and 2/19/14). Additionally, the Court should disallow a total of $470.24 associated with Ms. Harvey's deposition. See cost entries dated 9/27/13 (approx. $36.44), 10/14/13 (approx. $388.80), 10/7/15 (approx. $45.00).

**b. Deposition of Gerald Fattig**

Gerald Fattig had no personal knowledge of any facts in this case, and on information and belief, Plaintiffs took his deposition merely because he had been disciplined for spreading rumors about Letterman's death during the investigation. Mr. Fattig's deposition was not used during trial, and he was not called as a witness. It should have been apparent from the Davison report, Doc. 210-3, that Mr. Fattig had nothing of value to add to Plaintiffs' case. Accordingly, the Court should disallow a total of **4.0 hours**. This reflects the time spent taking, attending, and preparing for Mr. Fattig's deposition. *See* Attorney Rodopoulos's time entries for 7/29/13 (approx. 0.1 hours), 8/7/13 (0.60 hours), 8/8/13 (2.0 hours), and 2/16/14 (approx. 1.3 hours, which represents 3% of the total time preparing witness outlines and designations between 2/14/14 and 2/19/14). Additionally, the Court should disallow a total of $982.92 associated with Mr. Fattig's deposition. See cost entries dated 8/21/13 (approx. $488.86), and 8/19/13 (approx. $494.06).

### c. Deposition and Testimony of Charles Brown

Charles Brown was called at trial but offered no relevant testimony. On information and belief, Mr. Brown was deposed by Plaintiffs because it was hoped that Mr. Brown would support Plaintiffs' alternative theory that Letterman had been hitting his head prior to being moved to the padded cell. However, even if Mr. Brown had provided such information, which he did not, it would have been irrelevant and inadmissible because none of the Defendants, with the exception of Defendant Jennings, had heard Letterman had hit his head prior to arriving in the padded cell. Accordingly, the Court should disallow a total of **3.5 hours**. This reflects the time spent taking, attending, and preparing for Mr. Brown's deposition and securing his attendance at trial. *See* Attorney Rodopoulos's time entries for 10/17/13 (approx. 0.60 hours), 10/18/13 (approx. 1.60 hours), and 2/14/14 (approx. 1.3 hours, which represents 3% of the total time preparing witness outlines and designations between 2/14/14 and 2/19/14). Additionally, the Court should disallow a total of $779.04 associated with Mr. Brown's deposition and attendance at trial. See cost entries dated 9/3/15 ($101.15), and 11/14/13 (approx. $328.21), 10/30/13 (approx. $309.85), and 10/23/13 (approx. $39.83).

### d. Deposition of David Chalfant

The Court should disallow fees and expenses associated with Plaintiffs'

deposition of David Chalfant. Mr. Chalfant assisted Don Davison with his investigation into Mr. Letterman's death, but Mr. Chalfant's role as an investigator was limited. On information and belief, Plaintiffs took Mr. Chalfant's deposition on October 18, 2013, in the hopes he would provide information as to the whereabouts of certain missing video that might revive Plaintiffs' excessive force claims against the extraction team defendants and bolster Plaintiffs' motion for spoliation sanctions. However, the missing video was irrelevant to Plaintiffs' claims as Plaintiffs' retained expert, Dr. Mary Case, had already produced a report on September 17, 2013, conclusively stating that Letterman had died from injuries suffered in the padded cell. Accordingly, the Court should disallow a total of **3.5 hours**. This reflects the time spent taking, attending, and preparing for Mr. Chalfant's deposition. *See* Attorney Rodopoulos's time entries for 10/17/13 (approx. 0.60 hours), 10/18/13 (approx. 1.60 hours), and 2/14/14 (approx. 1.3 hours, which represents 3% of the total time preparing witness outlines and designations between 2/14/14 and 2/19/14). Additionally, the Court should disallow a total of $779.04 associated with Mr. Chalfant's deposition. See cost entries dated 11/14/13 (approx. $328.21), 10/30/13 (approx. $309.85), and 10/23/13 (approx. $39.83).

### e. Deposition of Thaniel McFee

The Court should disallow the fees and costs associated with Thaniel McFee's deposition. Thaniel McFee was a Major at WRDCC at the time Letterman was injured, but he had no peronal knowledge of the circumstances of Letterman's injuries or death. Major McFee was not called to testify at trial, and it should have been apparent at the time Plaintiffs took his deposition that he would have nothing of value to add to Plaintiffs' case. Accordingly, the Court should disallow a total of **4.0 hours**. This reflects the time spent taking, attending, and preparing for Mr. McFee's deposition and serving him prior to trial. *See* Attorney Rodopoulos's time entries for 9/27/13 (approx. 2.7 hours), and 2/18/14 (approx. 1.3 hours, which represents 3% of the total time preparing witness outlines and designations between 2/14/14 and 2/19/14). Additionally, the Court should disallow a total of $1070.90 associated with Mr. McFee's deposition and attendance at trial. See cost entries dated 9/14/15 (approx. $41.70), 2/25/14 ($31.80), 10/14/13 (approx. $388.80), 10/7/13 ($608.60), and 9/27/13 (approx. $36.45).

## C. Video depositions.

Nearly every deposition noticed by Plaintiffs was recorded both stenographically and by video. However, no video depositions were used during trial except for the videotaped depositions of Drs. Bedynek and Mitchell. Accordingly, even if Plaintiffs' costs were otherwise recoverable

regarding any particular witness, Plaintiffs should not be permitted to double recover for both stenographic and videotaped depositions. *See Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, No. 08-0840-CV-W-ODS, 2013 WL 1155245, at *2 (W.D. Mo. Mar. 20, 2013); *Am. Guarantee & Liability Ins. Co. v. U.S. Fidelity & Guaranty Co.*, No. 4:06-cv-655-RWS, 2010 WL 1935998, at *2 (E.D. Mo. May 10, 2010). Therefore, all else being equal, the following cost entries should be disallowed: 12/5/13 ($500.22), 11/25/13 ($1,712.13), 11/22/13 ($460.00), 11/14/13 ($656.42), 11/7/13 ($1,130.42), 10/14/13 ($777.61), 10/8/13 ($722.22), 9/26/13 ($636.04), 9/25/13 ($1,385.56), 9/23/13 ($500.22), 8/19/13 (approx. $3952.50).

**D. Costs associated with Dr. Mary Case.**

Plaintiffs spent $17,555.46 on their retained expert, Dr. Mary Case. See cost entries dated 10/5/15 ($6,025.59), 10/2/15 ($264.57), 10/1/15 ($65.00), 11/27/13 ($312.80), 11/21/13 ($2,437.50), and 8/22/13 ($8,450.00). Given that Dr. Case merely corroborated Dr. Mitchell's findings regarding the cause of Letterman's death and his prognosis, the costs associated with Dr. Case's testimony were excessive.

**IV. Claimed fees and costs are excessive in light of the verdict.**

As argued above, the Court should reduce the rates charged by Plaintiffs' attorneys and disallow numerous fees and costs on the grounds that such fees and costs were incurred in the pursuit of unsuccessful claims or were otherwise unreasonably incurred. In addition, and notwithstanding the Court's inclination to

24

reduce the fees and costs as specifically requested by Defendants above, the Court should reduce the fees and costs claimed by Plaintiffs to bring the award in line with the level of success achieved at trial. Indeed, Plaintiffs have submitted a bill totaling more than $376,000.00 even though they won only $311,000.00 from the jury after trial on the constitutional claims for which Plaintiffs are now seeking compensation.

"If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 436. Where a plaintiff seeks an amount for fees and costs that is disproportionate to the amount awarded, it is appropriate for a court to reduce the amount to accurately reflect the level of success achieved by the plaintiff. *Al-Birekdar v. Chrysler Group, LLC*, 499 Fed. Appx. 641, 649 (8th Cir. 2013).

In this case, the amounts requested by Plaintiffs are excessive given Accordingly, Defendants request the Court to reduce the total amount awarded to Plaintiffs in this case by no less than 50%. *See, e.g.*, *Phillips v. Missouri*, No. 97-0748-CV-W-5, 2000 WL 33910092, at *3 (W.D. Mo. Mar. 29, 2000).

## CONCLUSION

WHEREFORE, Defendants Bryan Earls, Jerry Farnsworth, Steven Lammers, and Noreen Gastineau respectfully request the Court reduce the amount of fees and costs awarded to Plaintiffs as requested by Defendants herein, and grant

Defendants any such other and further relief the Court deems fair and appropriate.

Respectfully submitted,

CHRIS KOSTER,
Attorney General

  /s/ H. Anthony Relys
H. Anthony Relys, #63190
Assistant Attorney General
Post Office Box 861
St. Louis, MO  63188
Tel: (314) 340-7861
Fax: (314) 340-7029
E-mail: Tony.Relys@ago.mo.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2015, the foregoing **Defendants' Suggestions in Opposition to Plaintiffs' Motion for Attorney's Fees** was filed via the Court's electronic filing system and served upon all counsel of record.

  /s/ H. Anthony Relys
H. Anthony Relys
Assistant Attorney General