IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

JIMMY LEE LETTERMAN and ANNETTE    )
FAY LETTERMAN,                              )
                                       )
        Plaintiffs,              )
                                       )   No. 5:12-CV-06136-NKL
      v.                        )
                                       )
WILLIAM D. BURGESS, III,        )
                                       )
        Defendants.           )

**ORDER**

Following entry of a jury verdict in their favor [Doc. 385], Plaintiffs Jimmy and Annette Letterman move under 42 U.S.C. § 1988 for an award of attorney fees, costs, and expenses, and ask that the award be included in the final judgment [Doc. 388]. The motion is granted in part and denied in part.

**I.      Background**

Plaintiffs' son, Danial Letterman, died in his cell at the Missouri Department of Corrections' Western Reception, Diagnostic and Correctional Center. Plaintiffs sued for violation of Danial's civil rights under 42 U.S.C. § 1983 based on denial of medical care, and for wrongful death under Missouri law.

After a four-day jury trial, the jury found in favor of Plaintiffs on the § 1983 claim for denial of medical care, and against Defendants Lammers, Gastineau, Farnsworth, and Earls. The jury awarded $256,793.29 for actual damages. This included $6,793.29 for funeral and burial expenses, $100,000 for physical pain, and mental and emotional suffering experienced by Danial before his death, and $150,000 for the nature and extent of the Constitutional injury. The jury also awarded $55,000 for punitive damages ($10,000 apiece against Defendants Lammers and

Gastineau; $15,000 against Defendant Farnsworth; and $20,000 against Defendant Earls). Thus, the total judgment on the § 1983 claim was $311,793.29. On the wrongful death claim, the jury found in favor of Plaintiffs and against all Defendants except Jennings. The jury awarded $1,000,000 in actual damages, apportioning fault as follows: 20% apiece to Defendants Lammers and Gastineau; 25% to Defendant Farnsworth; and 35% to Defendant Earls.

On 1/13/2016, the Court denied Defendants' motion for judgment as a matter of law, or for a new trial. [Doc. 408.]

As the prevailing party, Plaintiffs move for $310,732.50 in attorney fees and $65,981.23 in costs and expenses. Plaintiffs request attorney fees for the three attorneys who prosecuted this case: Ari Rodopolous at $350 per hour, Noah Wood at $375 per hour, and Mike Miller at $275 per hour. They also request paralegal fees at $125 per hour. The breakdown of hours and grand total are as follows:

| | |
|---|---|
| Attorney Rodopolous | 799 hours |
| Paralegal Tammy Reed | 240.8 hours |
| Attorney Wood | 1.3 hours |
| Attorney Miller | 1.8 hour |
| GRAND TOTAL | 1,042.9 hours |

The amount sought for costs and expenses covers items such as service of process, video technology, experts, depositions, witness fees, travel, and copies, but not charges for computer-assisted legal research.

## II.  Discussion

Courts may award reasonable attorney fees to parties who prevail on Section 1983 claims. 42 U.S.C. § 1988(b). The starting point for determining a reasonable attorney fee is the lodestar calculation: the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Hanig v. Lee,* 415 F.3d

822, 825 (8th Cir. 2005). There is a strong presumption that the lodestar calculation represents a reasonable fee award. *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992).

The party seeking the award must submit documentation supporting the requested amount, making a good faith effort to exclude hours that are excessive, redundant or otherwise unnecessary. *Hensley*, 461 U.S. at 434. Counsel must exercise "billing judgment" and be mindful that "hours that are not properly billed to one's client also are not billed to one's adversary pursuant to statutory authority." *Id.* (citation omitted). In assessing the amount requested, courts may consider: (1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the skill requisite to handle the case properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases. *United Health Care Corp. v. American Trade Ins. Co., Ltd.,* 88 F.3d 563, 575 n.9 (8th Cir. 1996) (citing *Hensley*, 461 U.S. at 434 n.3).

Furthermore, reasonable expenses of the kind a law firm would ordinarily bill its client may be included in an attorney fee award under § 1988. *Williams v. ConAgra Poultry Co.,* 113 F. App'x 725, 728 (8th Cir. 2004); *Sapa Najin v. Gunter,* 857 F.2d 463, 465 (8th Cir. 1988).

A plaintiff who prevails under a statute covered by § 1988 is normally entitled to fees, and the amount of a fee award is reviewed for abuse of discretion. *Cody v. Hillard*, 304 F.3d 767, 772 (8th Cir. 2002) (citing *Wray v. Clarke,* 151 F.3d 807, 809 (8th Cir. 1998) and *Jenkins v. Missouri,* 127 F.3d 709, 713–14 (8th Cir. 1997)).

3

Here, Defendants do not dispute that Plaintiffs are prevailing parties. Defendants argue that the amounts requested should be reduced because the hourly rates are excessive; some fees represent work done on claims that were voluntarily dismissed or on which Plaintiffs did not obtain relief; some amounts are cumulative or duplicative; and the total amount requested is excessive in relation to the size of the jury's award on the civil rights claim.

### A. Reasonableness of the hourly rates requested

Defendants contest the reasonableness of the hourly rates of $375, $350, and $275 requested by attorneys Wood, Rodopolous, and Miller, respectively, and $125 for paralegal time. "As a general rule, a reasonable hourly rate is the prevailing market rate, that is, the ordinary rate for similar work in the community where the case has been litigated." *Moysis v. DTG Datanet,* 278 F.3d 819, 828 (8th Cir.2002) (quotation omitted). In deciding upon the appropriate rate, "courts may draw on their own experience and knowledge of prevailing market rates." *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005). However, the prevailing market rate is only a starting point. The rate charged should also take into account the experience, skill, and expertise of the attorneys as well as the complexity, significance, and undesirability of the case. *See Casey v. City of Cabool, Mo.,* 12 F.3d 799, 805 (8th Cir. 1993). *See also Hendrickson v. Branstad,* 934 F.2d 158, 164 (8th Cir. 1991) (affirming higher rate, based on comparable nationally prominent federal civil rights counsel, rather than Iowa counsel, because of attorney's status as recognized national expert in civil rights law).

In support of the requested hourly rates, Rodopolous submitted an affidavit explaining that the Wood Law Firm is a small, Midwest-based law firm specializing in consumer class actions and concentrating almost exclusively in consumer law. He states that Wood is a founding partner of the firm, and has 15 years of civil trial experience; Miller is a civil litigator

4

who had three years of experience at the time he worked on this case and before leaving the firm; and the paralegal has 20 years of experience. Rodopolous states he has been practicing in Missouri since 2006, and has nine years of civil trial experience. In his first four years of practice, he worked at a large litigation defense firm in Kansas City, and his hourly rate was $285 as a mid-level associate in 2010. Since 2010, he has worked on a contingent-fee basis. He further states that the Wood Law Firm has been appointed as class counsel on multiple occasions in state and federal courts, and been awarded fees at hourly rates about the same as or higher than those presently requested. Rodopolous has handled or worked on about one civil rights case per year since 2006, typically on a *pro bono* basis. [Doc. 389-5.]

Plaintiffs further point to the September 21, 2015 edition of *Missouri Lawyers Weekly*, which summarizes the 2015 average billing rates of practicing attorneys in the Kansas City area and elsewhere in Missouri. In the Kansas City area, rates ranged from $125 per hour to $600 per hour, with an overall average of $328. Partner-level, Kansas City area attorneys' rates ranged from $315 to $600, and averaged $400; associate-level attorneys ranged from $125 to $380, and averaged $228. Statewide, Missouri attorneys' hourly rates ranged from $125 to $600, and averaged $332. Statewide, support-staff rates ranged from $65 to $285 per hour, and averaged $170. [Doc. 389, pp. 6-7; Doc. 395-1.]

In view of the general rule that a reasonable market rate is the ordinary rate for similar work in the community where the case has been litigated, *Moysis*, 278 F.3d at 828, the Court first observes that the $350 hourly rate requested by Rodopolous is only slightly higher than the Kansas City-area average for all attorneys, $328. Wood's $375 requested hourly rate is below the Kansas City partner-level average of $400. Miller's requested rate, $275, is higher than the $228 associate-level rate. And the requested rate for paralegal time, $125, is below the statewide

5

average rate of $170 for support staff.

Given the complexity of the case and the very high risk associated with a prisoner case, and the average billing rates for Kansas City attorneys, the Court cannot say that the hourly rates requested by the Plaintiffs' counsel are unwarranted. Defendants disagree, arguing that the attorneys' hourly rates should be reduced to $225 for Rodopolous, $200 for Wood, and $175 for Miller. Defendants point out that other attorneys with extensive experience in civil rights litigation have been awarded from $225 to $365 per hour in various cases in the Eastern and Western District of Missouri, and Plaintiffs' attorneys here do not have as much relevant, specialized experience. Plaintiffs respond that the case in which $225 was awarded was a simpler one than the present case. Defendants also argue that the requested paralegal rate should be reduced to $100 because that is the rate awarded in other cases in 2015. Defendants' arguments do not change the above analysis. The examples they provide demonstrate a range of fees that have been determined to be appropriate, not a bright line capping fees. In fact, based on the Court's own experience, the fees cited by the Defendants seem well below the hourly rates normally awarded and billed.

Accordingly, Rodopolous shall be compensated at $350 per hour, Wood at $375 per hour, Miller at $275 per hour, and paralegal Reed at $125 per hour.

**B.      Reasonableness of number of hours requested**

**1.      Claims that were voluntarily dismissed or otherwise unsuccessful**

Defendants argue that the amounts requested should be reduced for work associated with claims that Plaintiffs voluntarily dismissed or lost on summary judgment or at trial.

"When a plaintiff obtains substantial relief and the lawsuit consists of closely related claims, the award is not reduced because plaintiff did not prevail on every argument asserted."

6

*Shrader v. OMC Aluminum Boat Group, Inc.,* 128 F.3d 1218, 1220 (8th Cir. 1997) (citing *Hensley,* 461 U.S. at 435). However, when counsel's work on a successful claim is unrelated to the work on an unsuccessful claim, "no fee may be awarded for services on the unsuccessful claim." *Id.* at 434–35.

A court must first determine whether the plaintiffs' claims were discrete. If the claims were "distinctly different" and "based on different facts and legal theories," then the court cannot award attorney fees for services on the unsuccessful claims. *Hensley,* 461 U.S. at 434–35. But if the claims involved a "common core of facts" or were "based on related legal theories," the Supreme Court has recognized that much of counsel's time was devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. *Id.* at 435. In such a case, the court cannot view a plaintiffs' lawsuit as a series of discrete claims and should "focus on the significance of the overall relief obtained by the plaintiff[s] in relation to the hours reasonably expended on the litigation." *Id.* at 435. The court may use its discretion to determine the most appropriate way of assessing an award where the plaintiff achieved less than complete success. *Id.* at 436.

> a. **Claims against the extraction team: Defendants Finney, Sipes, Eivins, Mowry, Neumann, and Wagers**

During Danial's incarceration, mental health staff became concerned he would harm himself, reported to custody staff that he had been banging his head against the concrete wall in his regular cell, and determined he needed to be placed on full suicide watch in a padded cell. Danial would not voluntarily come out of his regular cell, so a six-person extraction team consisting of Corrections Officers Finney, Sipes, Eivins, Mowry, Neumann, and Wagers removed him and placed him in the padded cell. Plaintiffs filed the original complaint in November 2012, and filed an amended complaint adding claims against the extraction team

7

members in June 2013. [Doc. 37.] Plaintiffs deposed them around November 2013. Then in January 2014, Plaintiffs voluntarily dismissed the extraction team members, and the parties agreed they would be responsible for their own costs and fees. [Doc. 195.] Defendants argue that because the claims against the extraction team members were unsuccessful, hours spent drafting the amended complaint should be reduced, and time spent preparing for and attending team members' depositions should be disallowed; and time spent preparing witness outlines and deposition designations should be reduced proportionally, by about 18% or 8.5 hours. [Doc. 95, pp. 14-15.]

Time spent drafting amended pleadings to add ultimately unsuccessful claims concerning the extraction team is not allowable, but Plaintiffs state that they did not include such time. [Doc. 398, p. 8, "The time Plaintiffs' counsel spent related to drafting or pursuing legal claims against the extraction team, rather than investigating facts for use at trial, was not included in Plaintiffs' fee request."]

With respect to time spent preparing for and attending depositions, Plaintiffs state it was reasonable to do so, inasmuch as what happened in Danial's concrete cell before he was moved to the padded cell had to be investigated. The Department of Corrections lost 18 hours of video footage of Danial in the concrete cell. The surgeon who attempted to treat Danial at the hospital testified that the head injury was consistent with Danial's head having been slammed into concrete. Plaintiffs also state they requested that Defendants stipulate Danial's head injury occurred in the padded cell, but Defendants delayed doing so until the close of discovery. [Doc. 398, p. 7.] As for witness outlines and deposition designations, the extraction team members were on Plaintiffs' witness list for trial, and the parties were ordered to provide deposition designations 24 or 48 hours in advance if a witness' testimony would be offered by

written or videotaped deposition. [Doc. 335, pp. 4-5.] Finney was called to testify about the extraction and move to the padded cell.

Preparing for and taking the depositions of the extraction team members, and preparing witness outlines and deposition designations, was a reasonable expenditure of time in relation to the success Plaintiffs achieved on the merits of their claims. *See Simpson v. Merchants & Planters Bank,* 441 F.3d 572, 580 (8th Cir. 2006) (in considering whether to reduce a fee request, court should consider "whether the expenditure of counsel's time was reasonable in relation to the success achieved"). Furthermore, the work was likely to have been done regardless of whether Plaintiffs had at one point pursued claims against the extraction team, because Danial's behavior prompting his move to the padded cell, and what happened when he was moved there, were central to Plaintiffs' case. *See Ewald v. Royal Norwegian Embassy*, 2015 WL 1746375, at *10 (D. Minn. April 13, 2015) (allowing attorney's time for work on unsuccessful pretrial motion, because the work would likely have been performed regardless, and directly supported a successful claim).

Accordingly, the request for time spent preparing for and attending team members' depositions, and preparing witness outlines and deposition designations, is allowed and will not be reduced.

### b. Claims against Defendant Hammer

Hammer, another Corrections officer, was another defendant added to the amended complaint and whom Plaintiffs later voluntarily dismissed. Hammer, a Corrections Officer I, observed Danial in the padded cell through the hole in the door when Hammer arrived on third shift. He testified at trial about the "contorted" position in which Danial was laying, and that it looked like Danial had collapsed and was not sleeping. [Doc. 402, p. 132.] Hammer assisted in

9

opening the door so Danial could receive medical attention.

Defendants argue that because the claim against Hammer was ultimately unsuccessful, hours spent drafting the amended complaint should be reduced; time spent preparing for and attending Hammer's deposition should be disallowed; and time spent preparing witness outlines and depositions designations should be reduced proportionally, by about 3% or 1.3 hours. [Doc. 395, pp. 16-17.]

Plaintiffs state that they did not include drafting time related to the claim against Hammer, and will voluntarily withdraw 0.60 hours that were included for time spent on the stipulation of Hammer's dismissal. [Doc. 398, p. 8.]

Time spent in relation to Hammer's deposition will be allowed because it was a reasonable expenditure of time in relation to the success Plaintiffs achieved on the merits of their claims. *See Simpson,* 441 F.3d at 580. Furthermore, the work was likely to have been done regardless of whether Plaintiffs had at one point pursued a claim against him, because the custody staffs' observation of Danial and the steps taken to obtain medical care for him were central to Plaintiffs' case. *See Ewald*, 2015 WL 1746375, at *10.

Accordingly, the request for time spent preparing for and attending Hammer's depositions, and preparing a witness outline and deposition designations, is allowed and will not be reduced.

### c.    Claims against Defendant Jennings

Because Plaintiffs lost their claim against Jennings at trial, Defendants argue that Rodopolous' time spent drafting the amended complaint, and other time spent relating to Jennings is not recoverable. Plaintiffs state that they "already attempted to exclude time and expenses spent pursuing unsuccessful claims against Jennings," but they have specifically

identified hours in the fee request relating to Jennings that they have now agreed to withdraw. [Doc. 398, p. 11.] Specifically, Plaintiffs have agreed to withdraw Rodopolous' time reflected on entries dated 1/15/2014 – 10.8 hours, and 2/5/2014 – 1.4 hours, for drafting, reviewing, and preparing filings in connection with Jennings' motion for summary judgment. The request for paralegal time spent in connection with the same motion, dated 1/7/2014 – 1.7 hours, will be disallowed. The Court now turns to disputed entries.

Time spent drafting amended pleadings to add ultimately unsuccessful claims concerning Jennings is not allowable. Defendants ask the Court to reduce the request for Rodoplous' time spent on this task by 7% or .60 hours. The time entry for the task (6/4/13) is not defendant-specific. [Doc. 389-1, p. 1.] While Plaintiffs state they "attempted to exclude" time spent on unsuccessful claims against Jennings, they do not represent that they did so with respect to this entry. The request will be reduced by .60 hours.

Defendants challenge Rodopolous' time entry dated 1/7/14, 6.2 hours for time spent performing legal research for all five Defendants who were moving for summary judgment, including Jennings, and ask that it be reduced by one-fifth or 1.2 hours. Plaintiffs argue that the research performed was common to all five, so it would have been performed regardless of whether Jennings was a movant. The Court concludes the work was likely to have been done regardless, and was reasonable. Therefore, the request will not be reduced. *See Simpson*, 441 F.3d at 580; and *Ewald*, 2015 WL 1746375, at *10.

Similarly, Rodopolous' time spent preparing for depositions, which included Jennings' deposition, paralegal time spent on deposition preparation, and Rodopolous' time spent revising Jennings' trial outline will be allowed. Jennings played a central role in the events leading up to Danial's death, she testified at some length at trial, and her testimony supported Plaintiffs'

success with respect to the other claims. It was reasonable if not critical for Plaintiffs to depose Jennings regardless of whether she was a defendant, and to prepare for her testimony. *Id.*

Finally, Defendants request a reduction of Rodopolous' time spent opposing the interlocutory appeal filed by Defendants Jennings, Earls, and Farnsworth, inasmuch as the Eighth Circuit ultimately held Jennings was entitled to summary judgment on the constitutional claim against her. The total time Rodopolous spent was 88.3 hours, and Defendants ask that one-third, or 29.4 hours, be disallowed. Plaintiffs agree that some reduction is appropriate, but argue that a five-hour reduction is more reasonable, because much of the work on the appeal was common to the three Defendants who appealed, and briefing and argument specifically related to Jennings was not especially time-consuming.

Under the circumstances of this case, there was clearly substantial work done on appeal that would have had to be done whether there were one or three defendants. However, recognizing that there were some distinctive factual issues, the Court will strike 12 hours of the time requested for the appeal.

### d. Claims against Defendant Cluck

Judy Cluck was another defendant whom Plaintiffs named in the amended complaint. Plaintiffs voluntarily dismissed their claims against her in January 2014, and the parties agreed they would be responsible for their own costs and fees. [Doc. 195.] Defendants argue Rodopolous' time spent drafting the amended complaint should be reduced by .60 hours; time spent preparing for and attending Cluck's deposition, 3.65 hours, should be disallowed; and total time spent preparing witness outlines and deposition designations should be reduced by 1.3 hours. Defendants also state that the total paralegal time spent on Cluck "appears to have been *de minimis*" but is not specifically identifiable or severable from time spent on other activities

12

and should be reduced in an unspecified amount.  [Doc. 395, pp. 20-21.]

Cluck was not called to testify at trial and Plaintiffs offer no explanation demonstrating that this time would have been performed regardless, or how it directly contributed to their success on the other claims.  Accordingly, attorney time spent drafting the amended complaint is reduced by .60 hours; time spent preparing for and attending Cluck's deposition, 3.65 hours, is disallowed; and total time spent preparing witness outlines and deposition designations is reduced by 1.3 hours.  No reduction in paralegal time is made, based on Defendants' concession that such time appears to have been *de minimis*.

### 2. Other time spent

#### a. Plaintiffs' suggestions in opposition to Defendants' motion for summary judgment in part

Defendants challenge 23.1 hours of Rodopolous' time and 1.1 hours of paralegal time spent on unsuccessfully opposing Defendants' motion for partial summary judgment.  Plaintiffs have agreed to withdraw those hours.  [Doc. 398, p. 14.]

#### b. Plaintiffs' opposition to Defendants' motion to stay on interlocutory appeal

Defendants challenge 17.7 hours of Rodoplous' time spent opposing Defendants' motion to stay proceedings while their interlocutory, qualified immunity appeal was pending.  Plaintiffs have agreed to withdraw those hours.  [Doc. 398, p. 14.]

#### c. Investigation of claims related to medical staff

Defendants challenge Rodopolous' time spent researching possible claims against medical staff, 5/3/13 – 1.4 hours.  Plaintiffs had no recovery against medical staff; they were never even named as defendants.  The 1.4 hours are disallowed.

### d.   Spoliation sanctions

Defendants challenge 31.0 hours of Rodopolous' time spent preparing a motion for sanctions for spoliation of evidence.  Plaintiffs have agreed to withdraw those hours.  [Doc. 398, p. 14.]

### e.   Trial preparation

Defendants challenge entries for Rodopolous' time spent in trial preparation:

- 9/4/15 – 6.1 hours and 9/9/15 – 9.2 hours, for drafting and  responding to motions in limine; and

- 9/15/15 – 8.20 hours, for drafting jury instructions.

Defendants argue that these hours are unreasonable.  They point out that motions in limine had already been filed, and Rodopolous had already spent some time drafting proposed jury instructions in 2014. Thus, according to Defendants, Plaintiffs need not have expended as much time as requested in preparing their new filings.

The Court concludes the hours requested were reasonable.  To the extent Plaintiffs' counsel had to expend time reviewing his prior work, it was caused by Defendants' decision to pursue the interlocutory appeal, which required over a year to resolve.  The time spent was also reasonable because the parties' motions in limine filed in 2015 were not substantively identical to the ones filed more than a year earlier.  Furthermore, the jury instructions Plaintiffs prepared in 2014 were a draft; the set prepared in 2015 addressed the decision rendered in Defendants' interlocutory appeal, incorporated Defendants' input, and addressed issues raised at the pretrial conference.  Therefore, the hours will not be reduced.

### f.   Miscellaneous witness depositions

Defendants point out that the parties took a total of 37 depositions, and argue that Plaintiffs took five, irrelevant depositions of non-parties:  Heidi Harvey, Gerald Fattig, Charles

Case 5:12-cv-06136-NKL   Document 416   Filed 02/26/16   Page 14 of 22

Brown, David Chalfant, and Thanial McFee. Defendants ask that attorney time spent taking and attending the depositions, and preparing the witness outlines and deposition designations, should be disallowed or reduced, by a total of 19 hours.

These five persons worked at the prison and had, or potentially had, information directly relating to Plaintiffs' successful claims against Defendants Lammers, Gastineua, Earls, and Farnsworth. Plaintiffs explain that Harvey was a Corrections officer who worked in the control center of the prison, and whose testimony helped reveal evidence that Danial may have been banging his head against the concrete in his regular cell. Fattig was a Corrections officer who saw Danial and Plaintiffs at the hospital after Danial was transferred there. Brown was a Corrections officer who observed Danial in the concrete cell, during the same period covered by the lost video footage, and Brown testified at trial. Chalfant was an investigator who conducted and attended interviews of Defendants and witnesses as part of the internal investigation performed by the Department of Corrections, Office of Inspector General. And McFee was a major at the prison, who was identified in discovery as the person who knew why Danial was transferred to the padded cell, and how internal policy was interpreted. The time spent on their depositions was reasonable in relation to the success Plaintiffs achieved on the merits of their claims. *See Simpson,* 441 F.3d at 580. The reasonableness is underscored by the fact that the four Defendants whom the jury found against all falsified records they prepared at the institution or made false reports in the course of the investigation of Danial's death. Whether in hindsight Plaintiffs took five depositions too many was occasioned in no small part by Defendants' conduct and Plaintiffs' need to ensure they actually had the facts.

Accordingly, the challenged 19.0 hours are allowed.

### C.     Costs and expenses

#### 1.     Costs related to the above

In connection with their arguments for disallowance or reduction of time addressed above, Defendants ask that related costs be disallowed.  Those requests are ruled as follows:

#### a.     costs associated with extraction team defendants

Plaintiffs agree to withdraw $30 for service of process on Sipes.  [Doc. 398, p. 9.]

The $101.15 witness fee for Finney is allowed; Finney testified at trial.

Costs relating to the stenographic depositions and video depositions of Eivins, Mowry, Neumann, Sipes, Wagers, Finney, and Eivins, dated 11/21/2013, 11/25/2013, and 11/26/2013 are allowed.  As discussed above, time spent preparing for and taking their depositions was reasonable, and will be allowed.  Furthermore, Plaintiffs may recover the costs of both the written and video-record depositions.  It was reasonable to believe that videotape would be necessary at trial if any of the witnesses were unable to testify.  *See Rohrbough v. Hall*, 2010 WL 4940954, at *2 (E.D. Mo. Nov. 30, 2010).  "Additionally, it cannot be said that a videotape of a deposition is wholly duplicative of a transcript of the same deposition because the transcript only captures verbal communication, while the videotape captures both verbal and nonverbal communication."  *Id.*

#### b.     costs associated with other defendants

Costs relating to the stenographic depositions and video depositions of Defendant Jennings and Hammer, dated 11/25/2013 and 11/26/2013, are allowed.  As discussed above, time spent preparing for and taking their depositions was reasonable, and will be allowed, and the costs of both the written and video-record depositions was reasonably incurred.

16

### c. costs associated with other witnesses

Costs relating to the stenographic deposition and video deposition of Judy Cluck, 8/19/2013 – $ 494.06, and 8/21/2013 – $488.86, are not allowed. As discussed above, time spent preparing for and taking her deposition is not allowed.

Costs relating to the stenographic depositions and video depositions of Heidi Harvey, Gerald Fattig, Charles Brown, David Chalfant, and Thanial McFee are allowed. As discussed above, time spent preparing for and taking their depositions is allowed.

Plaintiffs also seek to recover the cost of compelling Brown and McFee's attendance at trial. Brown testified at trial about Danial's behavior in the regular cell, about reporting Danial's behavior up the chain of command, and about his trip to the hospital to see Danial. The Court cannot conclude the testimony was irrelevant. McFee, on the other hand, did not testify. Plaintiffs compelled McFee's attendance, notwithstanding that they called Warden Burgess to testify about institutional policy—the same information they planned to offer through McFee. Accordingly, the costs associated with compelling Brown's testimony are allowed. But the costs associated with compelling McFee's testimony at trial, 9/14/2015 – $41.70 and 2/25/2014 – $31.80, are disallowed.

### 2. Costs for other video depositions

Defendants argue that the cost of preserving the remaining depositions by video should not be allowed, except for the two that were used at trial, the video depositions of Drs. Bednyek and Mitchell. It was reasonable for Plaintiffs to prepare to present depositions by videotape at trial, in case any of the witnesses were unable to testify, and a videotaped deposition is not wholly duplicative of a transcribed one. The possibility that videotaped depositions could be needed in this case was heightened by the Defendants' immunity defense and prospect of an

Case 5:12-cv-06136-NKL   Document 416   Filed 02/26/16   Page 17 of 22

interlocutory appeal, which Defendants in fact took. Delay caused by an interlocutory appeal increases the risk that witnesses will be unavailable to later testify at trial.

The cases cited by Defendants do not change the analysis, because they were decided under a different fee- and cost-shifting provision, 28 U.S.C. § 1920. Section 1920 is not a general provision allowing a party to recover all expenses associated with trial preparation and trial. *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC,* 2013 WL 1155245, at *2 (W.D. Mo. Mar. 20, 2013). Thus, courts have disallowed recovery of the cost of both written and videotaped depositions by a party under that section. *Id.*; *see also Am. Guarantee & Liability Ins. Co. v. U.S. Fidelity & Guaranty Co.,* 2010 WL 1935998, at *2 (allowing party to recover cost of both written and videotaped deposition would be "contrary to the plain language" of § 1920). Section 1988 is not so limited.

### 3. Costs for expert witness, Dr. Mary Case

Defendants argue that the costs of Plaintiffs' expert, Dr. Mary Case, should not be allowed because Dr. Case's testimony "merely corroborated" the testimony by video of Dr. Mitchell concerning the cause of Danial's "death and prognosis." [Doc. 395, p. 29.] Dr. Case's testimony was offered live. Unlike Dr. Bednyek, who testified by deposition, Dr. Case was able to give testimony concerning not simply the *likely* cause but *the* cause of Danial's injury, was able to testify about the likelihood of Danial's survival had he received earlier treatment, and testified about what Danial was likely to have experienced after the fall. Her testimony did not merely reiterate or corroborate other testimony, and it was important. Those costs are allowed.

### D. Overall size of Plaintiffs' request

Finally, Defendants argue that notwithstanding the reductions in specific fees and costs

they seek, an additional reduction in the overall size of Plaintiffs' fee and cost request should be made "to bring [it] in line with the level of success achieved at trial. Plaintiffs have submitted a bill totaling more than $376,000.00 even though they won only $311,000.00" on the constitutional claim. [Doc. 395, p. 30.] Defendants request a reduction of the total award of "no less than 50%." [*Id.*]

Proportionality between damages and the fee award is not required, although the quantity of damages recovered is relevant to the fee award. *Loggins v. Delo*, 999 F.2d 364, 369-70 (8th Cir. 1993). Here, Plaintiffs' fee and cost request under § 1988 is slightly higher than the award they received on the constitutional claim, but no further reduction is justified.

Regardless of whether the Plaintiffs' success on the state-law claim is considered, Plaintiffs were very successful on their constitutional claim. Plaintiffs obtained more than nominal recovery for all three items of damage that they sought on the constitutional claim—funeral and burial expenses; Danial's physical pain, and mental and emotional suffering; and damages owing to the nature and extent of the constitutional violation. Plaintiffs also obtained an award of punitive damages against all four of the Defendants. Furthermore, in evaluating the reasonableness of the hours overall, the Court notes that there were multiple Defendants. The case involved the death of an inmate behind the closed doors of a prison facility. A video tape containing relevant evidence was lost. Preparation and trial of the case was all the more complicated because Defendants falsified records they prepared at the institution or made false reports in the course of the investigation of Danial's death. Defendants nevertheless vigorously defended the case, which lasted almost three years from the date of filing to the date of trial, and included Defendants' interlocutory appeal. In short, Plaintiffs' counsel earned the fee.

Defendants' cited authority, *Al-Birekdar v. Chrysler Group, LLC,* 499 Fed. Appx. 641

(8th Cir. 2013), does not change the analysis. In *Al-Birekdar*, the Eighth Circuit affirmed the district court's reduction of the plaintiff's fee request by 50% where the plaintiff succeeded on his retaliation claim, but not on claims of discrimination and for punitive damages. In contrast here, Plaintiffs entirely succeeded on their constitutional claim against all four Defendants, recovering actual and punitive damages.

## III. Conclusion

Plaintiffs Jimmy and Annette Letterman's motion for award of attorney fees, costs and expenses [Doc. 388] is granted in part and denied in part. The amount of fees awarded is $273,930.00 and the amount of costs and other expenses awarded is $64,894.41. The final amounts shall be included in the judgment. An Appendix reflecting the calculation is attached to this Order.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  February 26, 2016
Jefferson City, Missouri

# APPENDIX

ATTORNEY FEES DISALLOWED:

| Date | Hours | Description |
|------|-------|-------------|
| 5/3/2013 | 1.4 | research possible claims against medical staff |
| 6/4/2013 | .60 | stipulation of dismissal of Hammer |
| | .60 | preparing amended complaint against Jennings |
| | .60 | preparing amended complaint against Cluck |
| 7/31/2013 | .65 | preparation for Cluck's deposition |
| 8/5/2013 | 3.0 | attend Cluck's deposition |
| 11/7/2013 – 12/19/2103 | 31.0 | prepare motion for spoliation sanctions |
| 1/6/2014 – 2/5/2014 | 23.1 | suggestions in opposition to Defendants' motion for partial SJ |
| 1/15/2014 | 10.8 | suggestions in opposition to Jennings' motion for SJ |
| 2/5/2014 | 1.4 | suggestions in opposition to Jennings' motion for SJ |
| 2/14/2014 – 2/19/2014 | 1.3 | witness outline and deposition designations (Cluck) |
| 2/28/2014 – 3/2/2014 | 17.7 | suggestions in opposition to Defendants' motion to stay on interlocutory appeal |
| 6/2/2014 – 6/17/2015 | 12.0 | Jennings' interlocutory appeal |
| Total attorney fees disallowed: | <u>104.15 hours</u> | |

PARALEGAL FEES DISALLOWED:

| Date | Hours | Description |
|------|-------|-------------|
| 1/7/2014 | 1.7 | suggestions in opposition to Jennings' motion for SJ |
| 1/8/2014 – 1/9/2014 | 1.1 | suggestions in opposition to Defendants motion for partial SJ |
| Total paralegal fees disallowed: | <u>2.8 hours</u> | |

COSTS DISALLOWED:

| | | |
|---|---|---|
| 8/19/2013 | $494.06 | video deposition of Cluck |
| 8/21/2013 | $488.86 | deposition of Cluck |
| 2/25/2014 | $31.80 | service on McFee |
| 9/4/2015 | $41.70 | service on McFee |
| 9/14/2015 | $30.00 | service on Sipes |
| Total costs disallowed: | $1,086.42 | |

CALCULATION OF FEE AWARD (AFTER DEDUCTING DISALLOWED ATTORNEY AND PARALEGAL FEES):

| | | | |
|---|---|---|---|
| Attorney Rodopolous | 694.85 hours | $350 /hour | $243,197.50 |
| Paralegal Tammy Reed | 238.0 hours | $125/hour | $29,750.00 |
| Attorney Wood | 1.3 hours | $375/hour | $487.50 |
| Attorney Miller | 1.8 hours | $275/hour | $495.00 |
| Total | 935.95 hours | | $273,930.00 |

CALCULATION OF AWARD OF COSTS AND OTHER EXPENSES (AFTER DEDUCTING DISALLOWED COSTS):

$65,981.23 (requested) - $1,086.42 (disallowed) =  $64,894.81