IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JIMMY LEE LETTERMAN and ANNETTE FAY LETTERMAN, | ) ) ) |
| Plaintiffs, | ) ) ) No. 5:12-CV-06136-NKL |
| v. | ) ) |
| WILLIAM D. BURGESS, III, | ) ) |
| Defendants. | ) |

**ORDER**

Plaintiffs Jimmy and Annette Letterman move for apportionment of the damages awarded following the jury trial in this case. [Doc. 390.] The motion is granted in part and denied in part.

**I.    Background**

Plaintiffs' son, Danial Letterman, died in his cell at the Missouri Department of Corrections' Western Reception, Diagnostic and Correctional Center. Plaintiffs sued for violation of Danial's civil rights under 42 U.S.C. § 1983 based on denial of medical care, and for wrongful death under Missouri law. After a five-day trial, the jury found in favor of Plaintiffs on the § 1983 claim for denial of medical care, awarding actual and punitive damages totaling $311,793.29. On the wrongful death claim, the jury awarded $1,000,000 in actual damages.

The Court denied Defendants' motion for judgment as a matter of law or for a new trial on 1/13/2016, and subsequently entered an award under 42 U.S.C. § 1988 of $273,930.00 in attorney fees and $64,894.81 in expenses, or $338,824.81 in total.

The Court held a hearing on Plaintiffs' motion for apportionment on 2/2/2016. Plaintiffs presented evidence including declarations [Docs. 391-1—391-4] and their own testimony. They asked the Court to add the fee award under § 1988 to the amount of damages awarded by the jury

and to order "payment of attorney fees and expenses as contracted." Plaintiffs asked the Court then to apportion the remaining recovery as follows: 60% to Caitlyn Letterman, 35% to Annette Letterman, and 5% to Jimmy Letterman. [Doc. 391, p. 6.] Defendants did not file any suggestions in opposition to the motion, and offered no evidence or argument at the hearing.

After the hearing and at the Court's request, Plaintiffs filed, *ex parte*, a copy of the contract for employment that they executed with the Wood Law Firm. [Doc. 412.] The contract provides, in relevant part, for payment of a 40% contingency fee plus expenses. The Court subsequently entered an Order, concluding that while Annett and Jimmy Letterman had a contract with the Wood Law Firm for their representation, Caitlyn did not. The Court further noted that Missouri law provides how proceeds of a wrongful death claim are distributed, and permits a person who is entitled to share in the proceeds the opportunity to intervene. Consequently, the Court permitted Plaintiffs to file additional briefing concerning Caitlyn's obligation to compensate the Wood Law Firm and what an equitable distribution of the proceeds would be under the circumstances. The Court also permitted Caitlyn the opportunity to intervene and to be heard on the issues. [Doc. 422.]

Plaintiffs filed supplemental suggestions in support of their motion for apportionment. [Doc. 423.] Caitlyn did not intervene or seek to be heard. Annette Letterman, in her capacity as Caitlyn's appointed legal guardian, filed an affidavit on Caitlyn's behalf, stating Caitlyn agreed that the Wood Law Firm should be paid $310,732.50 in attorney fees as fair and equitable compensation from Caitlyn's requested apportionment of the total amount recovered in the lawsuit. [Doc. 423-2.] Plaintiffs reached that figure by multiplying the total amount of time their attorneys spent on the case, 1,042.9 hours, by the hourly rates previously approved by the Court in the context of awarding fees under §1988. Plaintiffs further asked that the amounts awarded by the jury and the Court's award under §1988 be apportioned 60% to Caitlyn, 35% to

2

Annette, and 5% to Jimmy; that Caitlyn pay $310,732.50 from her recovery in attorney fees in *quantum meruit*, plus 60% of the expenses; that Annette pay 40% from her recovery in attorney fees, plus 35% of expenses; and that Jimmy pay 40% from his recovery in attorney fees, plus 5% of expenses.

**II. Discussion**

    **A. Apportionment of the awards**

        **1. Who may share in the wrongful death, civil rights, and fee awards?**

Plaintiffs won jury verdicts for wrongful death and for the violation of Danial's civil rights resulting in his death, and received an award of attorney fees and expenses as a result of having prevailed on the civil rights claim. Plaintiffs ask that all of the awards be apportioned to them and to Caitlyn, according to the wrongful death statutes, Mo. Rev. Stat. §§ 537.080.1 and 537.095.3.

Missouri law establishes three classes of persons who may sue for the wrongful death of another person. § 537.080.1. The first class consists of the surviving "spouse or children or the surviving lineal descendants of any deceased children … or … the father or mother of the deceased[.]" § 537.080.1(1). If there is a person in the first class, then persons in the second and third classes are not entitled to sue. § 537.080.1(2)-(3). Further, if there are multiple persons in the class having standing to sue, "any one or more of them" may sue and recover damages "without joinder therein by any other person, provided that the claimant or petitioner shall satisfy the court that he has diligently attempted to notify all parties having a cause of action under Section 537.080." Mo. Rev. Stat. § 537.095.1; *see also Schiles v. Gaertner,* 659 S.W.2d 791, 793 (Mo. App. 2011) (all persons in the same class are entitled to seek recovery; there is no distinction between persons in the class).

The civil rights and fee awards are shared the same way. "[T]he Missouri wrongful death

statute … addresses the survival of injury claims that result in death." *Andrews v. Neer,* 253 F.3d 1052, 1058-59 (8th Cir. 2001) (citing *Wollen v. DePaul Health Ctr.,* 828 S.W.2d 681, 685 (Mo.1992)).  It is the "sole source of a cause of action in Missouri where the injuries sustained by the decedent caused the decedent's death." *Id.* at 1058.  Thus, a claim for injury resulting in death under § 1983 represents the injuries of the decedent, and the personal action arising from that injury and death survive to the deceased's spouse or children or other descendants.  *Id.* Further, the Court sees no reason to treat the fee award under § 1988 differently than the § 1983 award.  Section 1988 provides for an award to "the prevailing party" on a civil rights claim. Moreover, a § 1988 award does not represent an award to the lawyers.  *See Brown v. Gen. Motors Corp.,* 722 F.2d 1009, 1011 (2nd Cir. 1983).

At the time of his death, Danial was survived by his wife Luana Letterman, his daughter Caitlyn, and his parents, Annette and Jimmy Letterman.  The undisputed evidence shows Danial had begun divorce proceedings against Luana before he went to prison.  Luana left Danial and Caitlyn in June 2011 to have an affair and live with another man; in August 2011 took Caitlyn without Danial's permission; never returned to Danial; has been deemed an unfit parent by the Circuit Court of Webster County and is not allowed to see Caitlyn; and did not attend Danial's funeral.  [Doc. 391-1, pp. 1-2; Doc. 391-3.]  Luana received notice of Plaintiffs' lawsuit by certified mail and in person at her deposition, and has made no claim to the proceeds nor otherwise participated or asked to be heard. She in fact testified in deposition that she wanted no part in this lawsuit.  [Docs. 391-2 and 391-3.]  The Court finds Luana received notice of the lawsuit and had the opportunity to intervene or otherwise seek to be heard, but chose not to.  The Court further finds Luana suffered no losses on account of Danial's death.  Therefore, she will be

4

apportioned nothing.[1]

Caitlyn and Plaintiffs are the only persons in the first class to whom the recoveries may be and will be apportioned. § 537.080.1(1).

### 2. How much is each person entitled to?

Section 537.095.3 provides that the when the trier of fact awards damages on a claim for wrongful death, "[t]he court shall … enter a judgment as to such damages, apportioning [them] among those persons entitled thereto in proportion to the losses suffered by each as determined by the court."[2] The trial court has broad discretion in apportioning damages in a wrongful death action. *Kavanaugh v. Mid-Century Ins. Co.*, 937 S.W.2d 243, 246 (Mo. App. 1996). *See also Keene v. Wilson Refuse, Inc.*, 788 S.W.2d 324, 326 (Mo. App. 1990) ("The legislature chose to place the duty and responsibility of apportionment of losses in a wrongful death case squarely within the determination of the trial court."). The apportionment will not be disturbed unless "grossly excessive or inadequate." *Parr v. Parr,* 16 S.W.3d 332, 336 (Mo. 2000) (en banc).

The breadth of the trial court's discretion means that persons in the same class of beneficiaries need not take equal amounts. *Kavanaugh*, 788 S.W.2d at 246 (unequal amounts may be awarded), and *Collins v. Hertenstein,* 181 S.W.3d 204, 212-13 (Mo. App. 2006)

---

[1] Danial also had two other biological children, Ruby and Harleigh, neither of whom is in the first class of persons or entitled to recover. Ruby predeceased Danial, dying within days of her birth. Harleigh survives, but was legally adopted by another man in 2009, so is not entitled to maintain a wrongful death action under Missouri law or share in the awards. *See Baggett ex rel. Baggett v. Flinn*, 220 S.W.3d 334, 335 (Mo. App. 2007).

[2] Referencing laws of descent, § 537.095.2 provides a slightly different apportionment formula, used when a plaintiff ad litem has been appointed to bring suit and recovers. A plaintiff ad litem is appointed when there are no persons in the first or second class to bring suit. § 537.080.1(3); *Thorson v. Connelly,* 248 S.W.3d 592 (Mo. 2008) (en banc) (grandparent of the deceased was appointed where there was no parent, spouse, sibling, or other person in Class 1 or 2). Section 537.095.2's formula does not apply when persons in the first class are "before the court and their special circumstances were matters of evidence." *Farr v. Schoeneman*, 702 S.W.2d 512, 515 (Mo. App. 1985). Here, no plaintiff ad litem was appointed for purposes of bringing suit, and persons in the first class were before the court and their special circumstances were matters of evidence. Therefore, § 537.095.2's formula does not apply.

5

Case 5:12-cv-06136-NKL   Document 424   Filed 05/16/16   Page 5 of 14

(affirming 90%-10% split between mother and father of damages for the wrongful death of their child). It is even within the court's "firm discretion" to apportion zero damages to a party. *Banner ex rel. Bolduc v. Owsley,* 305 S.W.3d 498, 501 (Mo. App. 2010);

In support of their proposal that damages be apportioned 60% to Caitlyn, 35% to Annette Letterman, and 5% to Jimmy Letterman, Plaintiffs argue:

> (1) Caitlyn lost over 50 years of time, companionship, consortium, guidance, *etc*. with her father; (2) Danial always lived on the same property with Annette and had planned to do so for life; (3) Danial was Annette's and Jimmy's only child; (4) Annette's whole life was centered around Danial; (5) Danial was Jimmy's closest, if only, friend and Jimmy is very lonely without Danial's companionship; (6) Dr. Krueger calculated the value of parental care and services to raise Caitlyn to age 18 is over $700,000; and (7) Annette is now the primary caretaker responsible for providing such care and services to Caitlyn.

[Doc. 391, p. 5.]

The Court in its discretion concludes it will apportion 15% of the awards to Annette Letterman; 5% to Jimmy Letterman; and 80% to Caitlyn. Caitlyn, who was born in February 2010, was a toddler when Danial died. As Plaintiffs point out, she lost several decades of her father's companionship, consortium, and guidance. In connection with the wrongful death claim, Plaintiffs' economic expert testified that the value of parental care and services Caitlyn lost through the age of 18 alone is over $700,000.

In contrast, the evidence shows Plaintiffs supported Danial. There is no evidence Danial provided any support to Plaintiffs, nor of any other economic loss Plaintiffs suffered. Danial in fact had always lived on Plaintiffs' property and never planned to move away. Plaintiffs offered no evidence that Danial supported himself. Caitlyn already lived on the same property as Plaintiffs before Danial died, and was apparently in Annette's care when Danial was ordered to prison. The wrongful death claim was the largest component of the recovery, but most of Plaintiffs' damages appear to be in the nature of grief and bereavement, which are not

6

compensable under the wrongful death statute. *See Parr,* 16 S.W.3d at 337 (affirming apportionment of wrongful death award of $587,000 to decedent's wife, and $10,000 apiece to decedents' parents, where parents' damages were mostly in nature of grief and bereavement, decedent provided few services to parents, and they provided no evidence of economic loss).

Accordingly, the total amount of the wrongful death, civil rights, and fee and expense awards, or $1,650,618.10, is apportioned as follows: 15% to Annette Letterman, or $247,592.72; 5% to Jimmy Letterman, or $82,530.90; and 80% to Caitlyn, or $1,320,494.48

### B. Attorney fees

Annette and Jimmy Letterman had an express, contingency fee contract with the Wood Law Firm for payment of 40% of their recovery plus expenses. They agree their obligation for payment is established by that contract. Therefore, Plaintiffs are obligated to pay fees as provided under their contract with the Wood Law Firm, or 40% of their recovery: Annette owes $99,037.09, and Jimmy owes $33.012.36.[3]

But as the Court previously determined, Caitlyn did not have any contract with the firm. Although Annette Letterman was appointed Caitlyn's guardian by a state court, and Annette stated in her affidavit that Caitlyn wanted the Wood Law Firm to be paid from Caitlyn's recovery, this Court must approve any payment of fees and expenses made out of Caitlyn's recovery because Caitlyn is a minor. Mo. Rev. Stat. § 507.182.

Annette and Jimmy's contingency contract cannot be implied to Caitlyn, because contingency contracts may not be implied under Missouri law. *See Craig v. Jo B. Gardner, Inc.*, 586 S.W.2d 316, 324-25 (Mo. 1979) (en banc) (although attorney and client had contingency contract for representation concerning first accident, contract did not cover representation concerning second accident, and would not be treated as doing so, notwithstanding attorney's

---

[3] Annette: $247,592.72 x .40 = $99,037.09; Jimmy: $82,530.91 x .40 = $33,012.36

7

pursuit of recovery for both accidents; contingency contract would not be implied); *see also* Mo. Sup. Ct. R. 4-1.5(c) (contingent fee agreements must be in writing and signed by the client).

But generally, in the absence of an express fee contract, recovery may be had in *quantum meruit*. *Roberds v. Sweitzer,* 733 S.W.2d 444, 447 (Mo. 1987) (en banc) (recognizing that generally, "[a] promise to pay the reasonable value of an attorney's services is implied where there is no express contract, if the services are accepted by the client or rendered at his request[;] recovery may be had in *quantum meruit*, to the extent of the reasonable value of the lawyer's services to his client"). The wrongful death statute also expressly provides that "if there is no contract, or if the party sharing in the proceeds has no attorney representing him before the rendition of any judgment…, then the court may award the attorney who represents the original plaintiff such fee for his services, from such persons sharing in the proceeds, as the court deems fair and equitable under the circumstances[.]" § 537.095.4(2). *See also Collins,* 181 S.W.3d at 214-15 (in the absence of a contract in a wrongful death case, attorney fees are awarded on a *quantum meruit* basis under § 537.095.4(2)).

The issue, then, is what is a reasonable fee for Caitlyn to pay, and fair and equitable under the circumstances? In determining what a reasonable fee is under Missouri law, courts consider:

> (1) the time, nature, character and amount of services rendered; (2) the nature and importance of the litigation; (3) the degree of responsibility imposed on or incurred by the attorney; (4) the amount of property or money involved; (5) the degree of professional ability, skill and experience that was called for and used; and (6) the result that was achieved.

*Turpin v. Anderson*, 957 S.W.2d 421, 427 (Mo. App. 1997). "The trial court is vested with the discretion to evaluate these factors according to the particular circumstances of each case." *McCoy v. The Hershewe Law Firm, P.C.*, 366 S.W.3d 586, 596-97 (Mo. App. 2012).

8

Case 5:12-cv-06136-NKL   Document 424   Filed 05/16/16   Page 8 of 14

Here, the time, nature, character and amount of services rendered were significant. The Wood Law Firm worked on this lawsuit for three years. Dozens of depositions, extensive written discovery, discovery disputes, the Defendants' interlocutory appeal, and a five-day jury trial resulted in successful verdicts on both claims, against four Defendants. One attorney with the law firm, Mr. Rodopolous, provided almost all of the attorney services, which totaled over 900 hours.

The nature and importance of the litigation were also significant. The case involved the death of an inmate behind the closed doors of a prison facility. A video tape containing relevant evidence was lost. Preparation and trial of the case was all the more complicated because Defendants falsified records they prepared at the institution or made false reports in the course of the investigation of Danial's death, and Defendants nevertheless vigorously defended the case from beginning to end.

A great degree of responsibility was imposed on the attorney, Mr. Rodopolous, who provided almost all of the attorney services in the lawsuit. His exercise of a high degree of professional ability, skill, and experience is evident from the excellent result he achieved, in what was complicated litigation, as discussed above.

As for the excellent result achieved, the jury found for Plaintiffs on both claims against four Defendants. Plaintiffs obtained more than nominal recovery for all three items of damage that they sought on the civil rights claim—funeral and burial expenses; Danial's physical pain, and mental and emotional suffering; and damages owing to the nature and extent of the constitutional violation. Plaintiffs also obtained an award of punitive damages against all four Defendants on the civil rights claim. Plaintiffs were also very successful on the wrongful death claim, having been awarded $1,000,000. And as discussed in the preceding section, Caitlyn is entitled to 80% of the total recovery, the proportion representing her loss.

Based on the foregoing, the Court concludes Caitlyn is obligated to pay an attorney fee in *quantum meruit*, but will not use Plaintiffs' calculation. Plaintiffs used the total amount of hours they requested in their motion under §1988, including hours the Court did not allow, and multiplied the hours by the hourly rate the Court approved in making the award. There are at least two problems with that calculation. First, in reducing the hours compensated by the §1988 award, the Court has already concluded that the excluded time was not reasonably expended. The Court sees no reason to add such hours back in when determining Caitlyn's fee obligation in *quantum meruit*. *See McCoy*, 366 S.W.3d at 596-97 (To determine what constitutes a reasonable attorney fee value in *quantum meruit,* "consideration must be given to the fact that a client does not have to pay for duplicative service, and the services rendered must have enriched the client in the sense of benefits conferred.") (citing *Int'l Materials Corp. v. Sun Corp., Inc.,* 824 S.W.2d 890, 895 (Mo. banc 1992)).

Further, the hours allowed for purposes of the §1988 award represented hours expended on both the constitutional and wrongful death claims. In making their request under § 1988, the Plaintiffs did not separate hours spent on the respective claims. The materials Plaintiffs submitted in support of the request in fact demonstrated that the hours were not generally expended on one discrete claim or the other, but instead on the case as a whole. In other words, the hours allowed for the § 1988 award represent all time spent. Plaintiffs' suggestion that Caitlyn pay fees based on <u>all</u> hours spent on the case is inconsistent with the fact that the attorneys will also receive compensation for services pursuant to the fee agreement executed by Annette and Jimmy Letterman.

The Court is nevertheless mindful that in exercising its discretion as to what is a reasonable fee award in *quantum meruit,* it must consider the "particular circumstances of [the] case." *McCoy*, 366 S.W.3d at 596-97. As discussed above, this particular case presented

difficult obstacles to recovery, was hard fought, and the Wood Law Firm achieved an excellent result. That a Plaintiffs' verdict might never have been achieved was always a distinct possibility, and the firm certainly earned a fee.

The Court concludes that a reasonable fee for Caitlyn to pay, under the circumstances and based on its familiarity with this case and the relevant legal market, is $440,164.83, or one-third of the amount of the recovery apportioned to her.[4] One-third of a recovery represents a standard fee award, and there is no contractual agreement here. Furthermore, using one-third of Caitlyn's recovery, rather than one-third of the entire amount recovered, accounts for the fact that Annette and Jimmy will also pay attorney fees from their respective recoveries, thus avoiding the attorneys being paid twice for at least some of the same services. The Court further concludes that the resulting total of attorney fees the firm will be paid by Annette, Jimmy, and Caitlyn is fair and reasonable under the circumstances. *See Essex Contracting, Inc. v. Jefferson County,* 277 S.W.3d 647, 656 (Mo. 2009) (en banc) (the trial court is presumed to know the character and value of services rendered in a case it tried, and to be an expert on attorney fees) (citing *Nelson v. Hotchkiss,* 601 S.W.2d 14, 21 (Mo. 1980) (en banc).

As for expenses, Plaintiffs ask for payment of the same amount of expenses they requested in the context of the §1988 motion, but the Court disallowed some expenses as unreasonable. For the same reasons that the Court used the previously allowed number of hours rather than the original amount requested in the §1988 motion, the Court will use the previously allowed expenses, or $64,894.81. The Court concludes it would be fair and equitable under the circumstances to equally apportion payment of the expenses of $64,894.81 among Caitlyn and Plaintiffs.[5]

---

[4] Caitlyn's recovery of $1,320,494.48 ÷ 3 = $440,164.83
[5] Annette: $64,894.81 ÷ 30.0 = $21,631.60; Jimmy: $$64,894.81 ÷ 30.0 = $21,631.60; and Caitlyn: $64,894.81 ÷ 30.0 = $21,631.61.

## C. Summary and final matters

The following table summarizes the Court's apportionment of the awards and payment of fees and expenses:

|  | **Annette Letterman** | **Jimmy Letterman** | **Caitlyn Letterman** | **Total** |
|---|---|---|---|---|
| **Apportionment of wrongful death, § 1983, and § 1988 awards ($1,000,000 + $311,793.29 + $338,824.81) before deduction of fees and expenses** | $1,650,618.10 x 0.15 = **$247,592.72** | $1,650,618.10 x 0.05 = **$82,530.90** | $1,650,618.10 x 0.80 = **$1,320,494.48** | **$1,650,618.10** |
| **Attorney fees to Wood Law Firm** | $247,592.72 x contractual 40% = **($99,037.09)** | $82,530.90 x contractual 40% = **($33,012.36)** | *quantum meruit* $1,320,494.48 ÷ 3 = **($440,164.83)** | **($572,214.28)** |
| **Expenses to Wood Law Firm ($64,894.81)** | $64,894.81 ÷ 3 = **($21,631.60)** | $64,894.81 ÷ 3 = **($21,631.60)** | $64,894.81 ÷ 3 = **($21,631.61)** | **($64,894.81)** |
| **Net individual recovery after fees and expenses are deducted** | **$126,924.03** | **$27,886.94** | **$858,698.04** | n/a |

The Court now turns to final matters. Annette Letterman indicated in her affidavit, and testified at the apportionment hearing, that she is seeking to arrange for Caitlyn's share of the judgment to be irrevocably set aside under the Missouri Transfers to Minors Law, Mo. Rev. Stat. §§ 404.005 through 404.094. The Court hereby orders that a conservatorship be established with the Public Administrator of Webster County, Missouri or a suitable alternative, for purposes of

12

receiving and administering Caitlyn's share of the recovery. The conservatorship must be established, and the Court notified thereof, prior to any distribution of the judgment proceeds.

Next, by the terms of § 537.095.4, when a recovery is had for wrongful death, the court must order the claimant to collect the judgment, deduct expenses and attorney fees, distribute the proceeds, and report to the trial court that these steps have been accomplished. This process must be strictly followed. *Parr*, 16 S.W.3d at 338-39. In *Parr*, the court first apportioned the settlement proceeds between the decedent's wife and children. It then determined that the decedent's wife, who had suffered the largest economic and non-economic loss from his death, would serve as the claimant for purposes of the distribution process. In doing so, the court authorized the decedent's wife to receive the entire settlement amount. It ordered her, however, to subsequently pay expenses and attorney fees from the settlement proceeds, acknowledge satisfaction for the judgment and costs, and distribute the net proceeds to her children as determined by the court. Finally, the court ordered the decedent's wife to file written receipts demonstrating her compliance with the judgment.

This Court will follow the *Parr* framework in ordering distribution of the wrongful death, as well as the §1983 and §1988 proceeds here. For the purpose of this proceeding, Annette Letterman shall serve as the claimant. Annette shall collect the entire judgment from Defendants. From these proceeds, Annette shall distribute $637,109.09 in attorney fees and expenses to the Wood Law Firm[6], and acknowledge satisfaction for the judgment and costs. From the remaining proceeds, Annette shall distribute $858,698.04 to the conservator on behalf of Caitlyn Letterman; $126,924.03 to herself; and $27,886.94 to Jimmy Letterman. After such distributions are made, Annette must file a statement with this Court demonstrating compliance with this Order, as well as a receipt from the conservator, evidencing the payment made.

---

[6] Fees of $572,214.28 + expenses of $64,894.81 = $637,109.09

## III.     Conclusion

Consistent with the foregoing, Plaintiffs Jimmy and Annette Letterman's motion for apportionment of damages [Doc. 390] is granted in part and denied in part.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  May 16, 2016
Jefferson City, Missouri

14

Case 5:12-cv-06136-NKL   Document 424   Filed 05/16/16   Page 14 of 14